Mary B. HARRIS, Plaintiff-Appellant,

v.

Dr. William H. PENNINGER, Defendant-Respondent.

No. 11745.

Missouri Court of Appeals, Southern District, Division One.

March 3, 1981.

Charles C. Shafer, Jr., A Professional Corp., Kansas City, for plaintiff-appellant.

Bradley J. Fisher, John E. Price, Woolsey, Fisher, Whiteaker, McDonald & Ansley, Springfield, for defendant-respondent.

TITUS, Judge.

Plaintiff's left thigh was injured in a vehicular accident. A large hematoma ensued and was surgically aspirated by defendant on September 23, 1970. The affected area was bandaged by defendant but developed an avascular necrosis which, on October 16, 1970, was excised by another surgeon. Thereafter on November 14, 1972, plaintiff filed suit for personal injury damages allegedly resulting from defendant's negligent application of a too "tight bandage" following his evacuation of the hematoma. Plaintiff's first amended petition was filed October 10, 1978. In it she averred three causes of action against defendant resulting from the bandaging. Inter alia, on December 22, 1978, the trial court denied defendant's motion to dismiss plaintiff's first cause of action, but sustained defendant's subsequent motion to strike plaintiff's second and third causes of action. When the matter came on for trial, but before the introduction of evidence, plaintiff, without prejudice, dismissed her first

cause of action. Rule 67.01, V.A.M.R. The trial court then finally and wholly dismissed the entire cause and this appeal followed.

The first amended petition commences by stating that plaintiff sets forth her claims against defendant "in Three Counts with all facts in each Count incorporated in all Counts." As a prelude to specific count averments, the pleading, as already noted, recites allegations anent plaintiff's initial thigh injury, defendant's evacuation of the developed hematoma and his "too tight" bandaging of the situs thereof. Plaintiff's allegations continue to recount that defendant's operation on the hematoma corrected the medical problem produced by the collision and after "successful completion" of the evacuation of the hematoma, defendant "then applied a bandage 'too tight' in nature . . . [which] caused [plaintiff] to suffer an entirely new injury which she had not had prior to the [evacuating] operation or as the result of the collision [because defendant] failed to loosen or remove the 'tight bandage' . . . for three weeks after the operation. . . . As the result of the 'tight bandage' part of Plaintiff's left thigh began to rot away [making it] necessary on October 16, 1970, to remove a piece of rotting flesh [which had] created a stench, smell and odor" which made defendant's "too tight" bandaging most obvious.

In her "First Cause of Action," plaintiff asserted: "Defendant negligently and unskillfully conducted his treatment of Plaintiff by failing to loosen or remove the 'tight bandage' for three weeks. This caused [plaintiff] to lose a portion of her left thigh from a separate and distinct injury inflicted upon her by Defendant after successful treatment of her original injury."

Plaintiff's "Second Cause of Action" alleges that when defendant discovered plaintiff's rotting flesh, "he falsely and fraudulently attempted to conceal and did misrepresent . . . what had happened [and] skillfully concealed that his negligence had caused [plaintiff's] problem and represented . . . that her condition was an Act of God." The count asserts that defendant "further misrepresented the true facts by calling in [another surgeon] to carry on from what Defendant had done . . . so as to claim [plaintiff's] condition was caused by the [other surgeon]." Concluding the allegations of the second count, plaintiff asserted that "Defendant knew of the falsity of his representations; that Defendant knew the representations and acts were material to the Plaintiff and that she would rely upon what he told her; that Defendant intended that Plaintiff would act upon the representations in precisely the manner in which Plaintiff did and which was what Defendant had reasonably contemplated would be Plaintiff's manner of conduct; that Plaintiff had a right to rely upon what Defendant told her and did so rely all to her injury, and that Defendant's representations were the consequent and the proximate cause of Plaintiff's injury."

In her concluding or "Third Cause of Action" plaintiff asserted "that under the doctrine of res ipsa loquitur Defendant was solely in charge of her and her body after [evacuating the hematoma and] was in complete charge as to what bandages should be applied and how long they should remain in place. . . . Plaintiff had no knowledge of the proper technique, manner or method of bandages [and] relied totally upon Defendant to render skillfully whatever procedure he determined. [That] whatever was done or not done was solely by direction or control of Defendant who negligently and carelessly caused Plaintiff to lose a portion of her left leg."

The petition terminates with an enumeration of plaintiff's injuries which, allegedly, were "a direct and proximate result of the carelessness and negligence of Defendant" and plaintiff's prayer for damages, actual and punitive. As regards the latter, plaintiff asserted "that Defendant's acts and false representations in attempting to conceal the true facts from her and in trying to pass the fault to the Good Lord or another physician constitutes willful, wanton and malicious conduct."

■ As can be seen, supra, the allegations of plaintiff's "Second Cause of Action" undertake to parrot the elements of

actionable fraud as outlined in *O'Shaughnessy v. Ward Aircraft Sales & Service, Inc.*, 552 S.W.2d 730, 733[1] (Mo.App.1977), and need not be repeated here. Albeit the basic claim of injury is pronounced in the charge, the petition nowhere asserts or demonstrates a pecuniary loss resulting from the averred injury. As opposed to trespass and other distinct injuries for which a plaintiff may recover nominal damages if he fails to plead and prove actual pecuniary damages, fraud belongs to that class of torts of which pecuniary loss constitutes a part of the cause of action. *Lammers v. Greulich*, 262 S.W.2d 861, 864[3] (Mo.1953); *Jurcich v. General Motors Corp.*, 539 S.W.2d 595, 600–601[5] (Mo.App.1976). In other words, if a plaintiff has not suffered pecuniary damages as the result of the alleged fraud, no action for damages may be maintained. *Bales v. Lamberton*, 322 S.W.2d 136, 138[1] (Mo.1959).

Plaintiff's admonition to incorporate into each count the averments contained in the entire first amended petition, does not salvage the "Second Cause of Action." Nowhere in the pleading is there an assertion that the alleged fraud-injury caused plaintiff to suffer a pecuniary loss. Under the petition's heading of "Injuries and Damages," the claim plaintiff lays to injuries and damages are those which were "a direct and proximate result of the carelessness and negligence of the Defendant." "Fraud" is a malfeasance. That is, "fraud" is a positive act resulting from a willful intent to deceive. On the other hand, "negligence" is strictly nonfeasance or a wrongful act resulting from inattention or carelessness and not from design. Whatever grade it be, "negligence" does not include a purpose to do a wrongful act and does not embrace the tort of "fraud." *Federation Chemicals, Ltd. v. Chemical Const. Corp.*, 31 A.D.2d 799, 297 N.Y.S.2d 398, 400[3] (1969), aff'd 27 N.Y.2d 564, 313 N.Y.S.2d 129, 261 N.E.2d 269 (1970); *Moser v. Spizzirro*, 31 A.D.2d 537, 295 N.Y.S.2d 188, 189[2] (1968), aff'd 25 N.Y.2d 941, 305 N.Y.S.2d 153, 252 N.E.2d 632 (1969); *Davis v. North Carolina State Highway Commission*, 271 N.C. 405, 156 S.E.2d 685, 688 (1967); *Walter v. State*, 208 Ind. 231, 241, 195 N.E. 268, 272, 98 A.L.R. 607, 613 (1935); 37 C.J.S. Fraud § 1, at pp. 206–207. Thus, plaintiff's pleading asseverated only damages resulting to her from negligence, and, as the amended petition does not assert a claim for pecuniary damages resulting from fraud, the court nisi correctly struck and dismissed plaintiff's "Second Cause of Action."

If, as plaintiff initially admonished, all the allegations stated against defendant in her petition are, in fact, to be "incorporated in all Counts," then there was no error committed by the trial court in dismissing plaintiff's "Third Cause of Action." As previously recounted, this cause of action specifically relies on res ipsa loquitur for recovery. However, the general claim that plaintiff's injuries were produced by defendant's exclusive techniques, methods and procedures of applying bandages, all unknown to plaintiff, divests itself of res ipsa loquitur application when wed to plaintiff's previous declarations that her injuries resulted when defendant "applied a bandage 'too tight' in nature . . . [which] caused [plaintiff] to suffer an entirely new injury [because defendant] failed to loosen or remove the 'tight bandage' . . for three weeks after the operation." The doctrine of res ipsa loquitur serves to aid an injured party who does not know and cannot plead the specific cause of the injury. But if such a party knows and specifically pleads the cause of the injury as here, there is no call to apply the doctrine. *LoBello v. Laclede Gas Co.*, 517 S.W.2d 474, 477[3] (Mo.App. 1974); *Mizerany v. Gittemeier*, 437 S.W.2d 103, 106[6] (Mo.App.1969).

In malpractice cases, the doctrine of res ipsa loquitur is generally inapplicable [*Swope v. Printz*, 468 S.W.2d 34, 39[2] (Mo. 1971); *Williams v. Chamberlain*, 316 S.W.2d 505, 511[5] (Mo.1958)] as a plaintiff may not rely alone on the mere fact that an injury occurred during the course of treatment. *Swope v. Printz*, supra, 468 S.W.2d at 39. Although the res ipsa loquitur rule is usually not applicable from the fact alone that an unfavorable result follows treatment [*Langton v. Brown*, 591 S.W.2d 84, 88[5] (Mo.App.1979)], it is recognized that the

rule will apply where a patient, in the course of treatment, receives an unusual injury to an initially unaffected portion of the body or a foreign object is left in an operative cavity. *Hasemeier v. Smith*, 361 S.W.2d 697, 700 (Mo. banc 1962). Of course, the latter two instances are not involved here to exculpate the presently pleaded "Third Cause of Action" from the rule making res ipsa loquitur inapplicable in malpractice actions. It is a judicial function to determine whether a certain set of pleaded circumstances does, as a matter of law, permit the inference of negligence or application of the res ipsa loquitur rule. *Epps v. Ragsdale*, 429 S.W.2d 798, 800[4] (Mo.App. 1968). The allegations made in plaintiff's "Third Cause of Action" did not bring them within the ambit of the rule and the trial court correctly dismissed the count.

Judgment affirmed.

GREENE, P. J., and FLANIGAN, J., concur.